UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAELA MILLER, Plaintiff | ) | CIVIL ACTION NO. 4:19-CV-871 |
| v. | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL,[1] Defendant | ) | |

MEMORANDUM OPINION

## I. INTRODUCTION

Plaintiff Michaela Miller, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

supported by substantial evidence. In evaluating Plaintiff's physical capacity, the ALJ arrived at a physical capacity assessment that was more robust than the physical limitations assessed by all physicians to offer an opinion on the subject. Accordingly, the Commissioner's final decision will be VACATED and this case REMANDED to the Commissioner to conduct a new administrative hearing.

## II. BACKGROUND & PROCEDURAL HISTORY

On June 23, 2015, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 17; Doc. 8-2, p. 18). In these applications, Plaintiff alleged she became disabled as of January 1, 2009, when she was 36 years old, due to the following conditions: depression, migraines, blood pressure, neck pain, back pain, fibromyalgia, bone spurs, asthma, and anxiety. (Admin. Tr. 260; Doc. 8-8, p. 6). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. (Admin. Tr. 290; Doc. 8-8, p. 36). Plaintiff has obtained her GED. (Admin. Tr. 25; Doc. 8-2, p. 26). Before the onset of her impairments, Plaintiff worked as a motor vehicle assembler. (Admin. Tr. 24; Doc. 8-2, p. 25).

On December 18, 2015, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 17; Doc. 8-2, p. 18). On February 8, 2016, Plaintiff requested an administrative hearing. *Id*.

On January 8, 2018, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Howard Kauffman (the "ALJ"). *Id*. On March 29, 2018, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 17-26; Doc. 8-2, pp. 18-27). On May 24, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 226; Doc. 8-6, p. 3).

On April 26, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-3; Doc. 8-2, pp. 2-4).

On May 21, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, p. 3). As relief, Plaintiff requests that the Court reverse the decision at the administrative level below, and award Plaintiff disability, disability insurance benefits, and supplemental security income, or, alternatively, remand. *Id*.

On July 23, 2019, the Commissioner filed an Answer. (Doc. 7). In the Answer, the Commissioner maintains that the decision denying Plaintiff's applications for benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 7, pp. 3-4). Along with his Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 11), the Commissioner's Brief (Doc. 12), and Plaintiff's Reply (Doc. 13) have been filed. This matter is now ripe for decision.

## III. STANDARDS OF REVIEW

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A

single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir.

1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on March 29, 2018.

age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments

identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 2 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a); *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant’s age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ’s disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by “a clear and satisfactory explication of the basis on which it rests.” *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which

evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV. DISCUSSION

Plaintiff raised the following issues in her Brief:

(1) Substantial Evidence does not support the ALJ's evaluation of treating physician Dr. Kramer's opinion; and,

(2) The ALJ's multiple errors with symptom evaluation compel reversal.

(Doc. 11, p. 1).

### A. The ALJ's Decision Denying Plaintiff's Applications

In his March 2018 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2016. (Admin. Tr. 19; Doc. 8-2, p. 20). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between May 1, 2011[3] and December 31, 2016 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 22; Doc. 8-2, p.

[3] Although Plaintiff alleged an onset date of January 1, 2009, she also indicated that her medical condition did not prevent her from working until April 30, 2011. The ALJ therefore found that she engaged in substantial gainful activity from January 1, 2009 to April 30, 2011. (Admin. Tr. 19-20; Doc. 8-2, pp. 20-21).

23). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: obesity, degenerative disc disease, and migraines. (Admin. Tr. 20; Doc. 8-2, p. 21). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 21; Doc. 8-2, p. 22).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except:

> claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; can sit, stand or walk for a total of six hours each in an eight-hour work day; can engage in occasional postural maneuvers; and cannot use ladders ropes or scaffolds. Additionally, due to the effects of her pain, the claimant is limited to the performance of simple routine and repetitive tasks, and should have only occasional interaction with coworkers, supervisors or the public.

(Admin. Tr. 21-22; Doc. 8-2, pp. 22-23).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 24; Doc. 8-2, p. 25). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin.

Tr. 25; Doc. 8-2, p. 26). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Bakery Racker, DOT #524.687-018; Small Products Assembler, DOT #739.687-030; Housekeeping Cleaner, DOT #323.687-014. (Admin. Tr. 26; Doc. 8-2, p. 27).

### B. WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Two sources provided medical opinions concerning Plaintiff's physical functional capacity: Dr. Kramer ("Plaintiff's primary care physician); and Dr. Long (a consultative examiner retained by the Social Security Administration).

On December 8, 2015, Dr. Long examined Plaintiff and completed a narrative report and check-box medical source statement. In his narrative report, Dr. Long made the following observations:

> General Appearance, Gait, Station: The claimant is right handed. The claimant appeared to be in no acute distress. Gait normal. Cannot walk on heels and toes. Cannot squat. Stance normal. Used no assistive devices. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty.
>
> . . . .
>
> Musculoskeletal: No scoliosis, kyphosis, or abnormality in thoracic spine. [Straight leg raise] to 70 degrees bilaterally produces back pain. No evident joint deformity. Joints stable and nontender. No redness, heat or effusion. 10 out of 18 trigger points are positive.

> Neurologic: [Deep tendon reflexes] physiologic and equal in upper and lower extremities. No sensory deficit noted. Strength 5/5 in the upper and lower extremities.
>
> Extremities: No cyanosis, clubbing or edema. Pulses physiologic and equal. No significant varicosities or trophic changes. No muscle atrophy evident.

(Admin. Tr. 531-532; Doc. 8-13, pp. 67-68). In his medical source statement, Dr. Long assessed that Plaintiff could: occasionally lift or carry up to ten pounds; sit up to one hour at a time, and for a total of eight hours per workday; stand up to ten minutes at a time, for a total of twenty minutes per eight-hour workday; and walk up to fifteen minutes at one time, and for a total of thirty minutes per eight-hour workday; frequently reach (in all directions except overhead), handle, finger, feel, and operate foot controls; occasionally reach (overhead), push/pull, balance, stoop, kneel, crouch, and crawl. (Admin. Tr. 534-539; Doc. 8-13, pp. 71-75).

In his decision, the ALJ gave "limited" weight to Dr. Long's medical source statement. In doing so the ALJ explained:

> In forming the residual functional capacity assessment the undersigned has given limited weight to the opinion of consultative examiner Dr. Long in Exhibit 5F. Dr. Long's opinion that the claimant would be limited to a range of sedentary work activity was not clearly supported by his own documented clinical observations of the claimant's functioning on the date of the evaluation and is not consistent with the claimant's reported capabilities and demonstrated performance in treatment notes over the course of the period beginning May 2011.

(Admin. Tr. 24, Doc. 8-2, p. 25).

On November 11, 2017, Dr. Kramer completed a check-box/fill-in-the-blank questionnaire about Plaintiff's physical functional capacity. (Admin. Tr. 647-651; Doc. 8-15, pp. 30-34). In that questionnaire, Dr. Kramer assessed that Plaintiff could: sit for up to twenty minutes at one time, and for less than two hours total per eight-hour workday; stand up to fifteen minutes at one time, and stand or walk for less than two hours total per eight-hour workday; occasionally lift or carry up to ten pounds; rarely twist, stoop (bend) crouch/squat, climb ladders, or climb stairs. He also assessed that Plaintiff would need to get up and walk every twenty minutes, must be permitted to shift positions at will, will frequently require unscheduled work breaks lasting up to one hour at a time, and would be absent from work more than four days per month. Dr. Kramer identified the following clinical findings and objective signs to support his assessment: anxious mood/depressed affect/[illegible word] focus/ decreased neck roll, and tenderness with palpation.

The ALJ gave "little" weight to Dr. Kramer's physical RFC assessment. In doing so, he explained:

> [t]he degree of restriction reflected in [Dr. Kramer's] opinion (including an inability to sit or stand/walk for a total of even two hours per day, and a likelihood of more than four work absences per month) is clearly inconsistent with Dr. Kramer's contemporaneous

> treatment notes and examination findings, as well as with the nature of the claimant's longitudinal treatment history during the period at issue.

(Admin. Tr. 24; Doc. 8-2, p. 25).

Plaintiff argues:

> Lastly, the ALJ rejected all opinions regarding Miller's functional limits—"limited weight" was assigned to the opinion of consultative examiner Dr. Long and "little weight" was assigned to treating physician Dr. Kramer's opinion. (Tr. 24) The ALJ's rejection of all of the opinion evidence regarding Miller's impairments created an "evidentiary deficit" that he could not reasonably fill with his lay medical opinion. *See Suide v. Astrue*, 371 Fed.Appx. 684, 690 (7th Cir. 2010) (remanding where ALJ created an evidentiary deficit when the ALJ rejected treating physician's opinion and then made a RFC determination without supporting medical evidence); *Knier v.* [*Berryhill*], No. 3:16cv457[, 2017 WL 2882289] (M.D. Pa. Jul. 5, 2017). .[sic] Rather than using one of the resources available to him to properly support his finding, the ALJ erred by forgoing ahead with his independent assessment of Miller's abilities to fill the evidentiary gap based on his own interpretation of the medical evidence, which was not grounded in the medical record or otherwise properly supported. Instead, the ALJ should have requested the presence of a medical expert at the hearing or sent interrogatories to a medical expert, following the hearing to obtain a supported opinion. By filing the evidentiary gap with his own lay assessment that lacked record support, the ALJ reversibly erred.

(Doc. 11, p. 9).

In response, the Commissioner argues:

> Consistent with governing regulations and policy, the Third Circuit Court of Appeals reiterated in *Chandler*, 667 F.3d at 359, that it is "[t]he ALJ – not treating or examining physicians or State agency consultants – [who] must make the ultimate disability and RFC

> determinations . . . The law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Id.* at 361 (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). Because it is the ALJ who has primary responsibility for making the RFC determination "based on the medical evidence, [sic] he is *not required* to seek a separate medical opinion." *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) (emphasis added).
>
> Thus, the ALJ was not bound by any opinion in the record. The ALJ nevertheless considered the opinion evidence in accordance with the regulation, and articulated appropriate reasons for affording them less weight.

(Doc. 12, pp. 16-17).

It appears that Plaintiff's argument falls within the growing number of cases that require the Court to compare the language offered in two Third Circuit opinions: *Chandler v. Comm'r of Soc. Sec.* 667 F.3d 356 (3d Cir. 2012), and *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986). Plaintiff argues that the ALJ's RFC assessment is not supported by the medical opinion evidence of record, and indeed my review of the ALJ's opinion confirms that they ALJ gave "little" weight to both medical opinions about Plaintiff's physical limitations. My review of those opinions also reveals that both of those medical opinions include much more restrictive limitations than set by the ALJ in his RFC assessment. In response, the Commissioner argues that the ALJ is permitted to reach RFC determinations without outside medical expert review of each fact incorporated into the decision.

There is no dispute that it is the ALJ's duty to assess a claimant's RFC. 20 C.F.R. § 404.1546(c); 20 C.F.R. § 416.946(c). Further, the Commissioner's regulations and Third Circuit caselaw are clear that an ALJ must consider more than just medical opinions when evaluating a claimant's RFC. 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 416.945(a)(3) (same as 20 C.F.R. § 404.1545(a)(3)); 20 C.F.R. § 404.1513 (explaining that "evidence" is "anything you or anyone else submits to us or that we obtain that relates to your claim."); 20 C.F.R. § 416.913 (same as 20 C.F.R. § 404.1513); *Burnett v. Comm'r of Soc. Sec.* , 220 F.3d 112, 121 (3d Cir. 2000) ("In making a residual functional capacity determination, the ALJ must consider all evidence before him."). Although objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include findings about a claimant's functional abilities may be enough to support specific findings in an RFC assessment on their own, as a practical matter such documents do not always contain this information. Thus, the reality in Social Security cases is that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." *McKean v. Colvin,* 150 F. Supp.3d 406, 418 (M.D. Pa, 2015).

As this Court has explained:

> It is well established that an ALJ "is not free to set his own expertise against that of a physician who presents competent evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). In cases where the ALJ does not give any significant or great weight to any medical opinion, the Court has found that the ALJ "seemingly interpreted the medical evidence of record, and substituted her own opinion for that of a medical one in arriving at [a] Plaintiff's RFC." *McKay v. Colvin*, No. 3:14-CV-2020, 2015 WL 5124119, *17 (M.D. Pa. Aug. 13, 2015). *McKean* is particularly on point in this matter, as there the Court found the ALJ's RFC not supported by substantial evidence where the ALJ dismissed the only medical opinion in the record rendered in regard to the claimant's physical limitations. *See McKean*, 150 F. Supp. 3d at 418.

*Decker v. Berryhill*, No. 1:17-cv-00945, 2018 WL 4189662 at *6 (M.D. Pa. June 8, 2018) *report and recommendation adopted* 2018 WL 4184304 (M.D. Pa. Aug. 31, 2018).

"It is not error in and of itself to disagree with the opinion of a medical professional." *Id.* An RFC assessment, however, is not supported by substantial evidence where an ALJ assesses a lesser degree of limitation than found by any medical professional without citing to another type of evidence that supports his or her assessment. *Id.* (listing cases). The ALJ in this case fails to cite any evidence consistent with his ultimate conclusion that Plaintiff is able to lift up to twenty pounds, stand six hours per day, or walk six hours per day. Unlike in this case, where the ALJ found that Plaintiff had a lesser degree of physical limitation than

any medical source, the ALJ in *Chandler* crafted RFC assessments that reflected a greater degree of limitation than was contemplated by the physician's findings. *Chandler*, 667 F.3d at 361-63. "[W]hen an ALJ is saying that a claimant can do *more* than the medical source opinion states, courts exercise caution and suggest that only rarely can an ALJ unilaterally impose an RFC on a claimant that is less restrictive than the residual functional capacity found by the medical professional." *Metzgar v. Colvin*, No. 3:16-CV-1929, 2017 WL 1483328 (M.D. Pa. Mar. 29, 2017) (emphasis in original), *report and recommendation adopted* 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017).

In exercising that caution, I find that the facts of this case compel remand. Both Dr. Kramer and Dr. Long assessed that Plaintiff could not lift 20 pounds and could not stand or walk for up to six hours per day—as is required to perform light work pursuant to 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b). There is no treatment record that affirmatively states that Plaintiff is able to lift 20 pounds or is able to stand or walk for up to six hours per day. Instead, the ALJ appears to rely on the lack of specific evidence on that subject to discount the opinions of Doctors Kramer and Long. While that lack may be a proper basis to choose between two competing medical opinions that reach different conclusions under 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927, it is not enough by itself to support an RFC

assessment when all medical opinions of record contradict it. Accordingly, I find that the ALJ's RFC assessment is not supported by substantial evidence. On remand, the ALJ should reevaluate the existing medical opinion evidence, and may develop the record as he or she deems necessary.

## V. CONCLUSION

Accordingly, Plaintiff's request for reversal and disability insurance benefits or, alternatively, remand will be GRANTED as follows:

(1) The final decision of the Commissioner will be VACATED.

(2) This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3) An appropriate Order shall issue

Date: May 4, 2020

BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge